## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between: (i) the City of Portland, Oregon (the "City"), and (ii) Plaintiffs Tiana Tozer, Philip Rhodes, Barbara Jacobsen, Dane Southard, Lorien Ilena Welchoff, Pauline Long, Mark Barnhill, Steve Jackson, Keith Martin, and Steven Rebischke (collectively, "Plaintiffs"). The City and Plaintiffs shall be referred to in this Agreement individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, each of the Plaintiffs are individuals with Mobility Disabilities or caretakers of individuals with Mobility Disabilities within the City of Portland, including, but not limited to, those who use a wheelchair, scooter, or other assistive device for any Mobility Disability. Each of the Plaintiffs is an individual with a disability or a caretaker of individuals with disabilities within the meaning of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131(2), 12102(1) ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 705(20), 794(a) ("Section 504"). Plaintiffs have filed a lawsuit entitled *Tozer at al. v. City of Portland*, Case No. 3:22-cv-01336-MO in the United States District Court for the District of Oregon (the "Lawsuit").

WHEREAS, in entering into this Agreement, the City does not admit that it has violated, failed to comply with, or has any liability to Plaintiffs under any provisions of the ADA or Section 504 relating to accessibility for persons with Mobility Disabilities to the sidewalks, any regulations or guidelines promulgated pursuant to those statutes, or any other applicable laws, regulations or legal requirements (including laws giving rise to public nuisance claims) with respect to access to or obstruction of sidewalks (collectively, the "ADA, Section 504 or Related Laws"). This Agreement and its terms and provisions shall not be offered or received as evidence for any purpose whatsoever against the City in any action or proceeding, other than a proceeding to enforce the terms of this Agreement.

WHEREAS, this Agreement is entered into by the Parties in recognition of the significant hardships that persons with Mobility Disabilities have experienced in recent years due to obstructed Sidewalks within the City. The City takes this issue very seriously and believes that persons with Mobility Disabilities should have full access to City Sidewalks.

WHEREAS, the ultimate goal of the Parties – which is resource-dependent and outside the City's exclusive control – is that all City Sidewalks should be and remain free and clear of any obstruction from tents, personal property, and debris. The City is appreciative of the efforts and personal accounts of Plaintiffs and enters into this Agreement in an effort to meaningfully improve their situations and the situations of all other persons with Mobility Disabilities.

WHEREAS, the City has concluded that this Agreement is desirable to avoid the time, risk, and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of those with disabilities, to ensure compliance with laws protecting the rights of individuals with Mobility Disabilities, and to resolve the Lawsuit.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

1

Exhibit 1

## I.    DEFINITIONS

For purposes of this Agreement, the following terms have the following definitions:

A.  **"Block"** means the area between two adjacent intersections.

B.  **"Campsite"** means any place where any tent, lean-to, shack, or other structure, any vehicle or part thereof, or any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained for the purpose of establishing or maintaining a temporary place to live.

C.  **"Mobility Disability"** means any disability, as defined by the ADA, that causes visual impairment or limits a person's ability to walk, ambulate, maneuver around objects, or ascend or descend steps or slopes.  A person with a Mobility Disability may require a wheelchair, scooter, electric personal assisted mobility device, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist their navigation along a Sidewalk, or may be semi-ambulatory.

D.  **"Month"** means a calendar month (i.e., January, February, March, etc.).

E.  **"Quarter"** means the periods of January 1 through March 31, April 1 through June 30, July 1 through September 30, and October 1 through December 31 in a given year.

F.  **"Sidewalk"** means the pedestrian through zone, which is the area of the sidewalk corridor on City sidewalks intended for pedestrian travel or access to public transit, as referenced in the PBOT Pedestrian Design Guide 2022 and City Ord. 14A.50.030.A.3. While a newly built sidewalk, built pursuant to the PBOT Pedestrian Design Guide will likely have a pedestrian through zone of 6'-8' feet, nothing in this agreement requires the City to make modifications to the pedestrian through zone on a particular sidewalk to meet the design requirements in the PBOT Pedestrian Design Guide. Figure B-2 of the PBOT Pedestrian Design Guide is attached as Exhibit A to illustrate pedestrian through zones.

G.  **"Year"** means the City's fiscal year from July 1 to June 30.

## II.    TERM OF SETTLEMENT AGREEMENT

The Settlement Agreement shall become effective upon approval by the City Council (the "Effective Date") and shall remain in effect through June 30, 2028. The foregoing time period is referenced herein as the "Term of the Agreement."

Section I, Section II and Sections X through XVIII shall all become operative as of the Effective Date.  Sections III through IX shall become operative on July 1, 2023.  Notwithstanding the foregoing, the obligations in Sections III.D., V.C., and VI will not be enforceable until five months following their operative date. However, the City will begin developing the programs and positions necessary for compliance with Sections III.D., V.C., and VI immediately following the Effective Date.

Exhibit 1

## III.    CAMPSITE REPORTING SYSTEM

The City will implement the following reporting programs to ensure that community members with Mobility Disabilities can promptly and efficiently report obstructions to the Sidewalk caused by any Campsite(s).

A.  **311:** The City will provide 24-hour reporting through 311. Live 311 operators will be available during operational hours. The script for call takers will include a question of whether a Campsite being reported is obstructing the Sidewalk. After-hours reports can be made by calling 311 and following the instructions provided.

B.  **Online Reporting:** The City will provide 24-hour reporting through an online portal accessible from the City's online platform www.portland.gov. The online reporting form will allow the reporting party to indicate whether the Campsite is obstructing the Sidewalk. The form will also allow the reporting party to submit pictures of the obstruction.[1]

C.  **Database:** The City will aggregate data from both 311 call-in reports and the online portal into a single tracking system and the City will maintain an ongoing database of Campsites reported as obstructing the Sidewalk.

D.  **ADA Request:** The City will create a simplified and efficient process for individuals with a Mobility Disability to request an ADA accommodation related to an obstruction to the Sidewalk.

## IV.    TENT DISTRIBUTION

A.  **Limitations on Distribution.** The City and its contractors will not distribute tents or tarps during the Term of the Agreement, with the following limited exceptions. City employees and contractors may only provide tents or tarps under the following circumstances:

1.  When failing to provide an individual with a replacement tent or tarp will inhibit the operations of City employees or contractors in the course of removing Campsites.

2.  When severe winter weather shelters are activated in Portland.

3.  When necessary to replace property that was damaged or destroyed during a Campsite removal.

---

[1] The online reporting form is currently available at https://pdxreporter.org/#NewReport, through the link identified as "Campsite Reporting."

Exhibit 1

**B. Instruction on Placement.** Any City employee or contractor providing tents or tarps to individuals within the limited exceptions above will discourage the use or placement of those tents or tarps on the Sidewalk.

## V.    CAMPSITE ASSESSMENTS AND REMOVALS

**A. Assessments:** Within five business days following a report of a Sidewalk obstructed by a Campsite, a City employee or contractor shall visit the identified Campsite.[2] At that time, the City employee or contractor will identify whether the identified Campsite is obstructing all or any portion of the Sidewalk and will indicate the results of that assessment in the City's database.

**B. Prioritization:** The City will prioritize for removal Campsites that are obstructing all or any portion of the Sidewalk by ensuring that not less than thirty-five percent (35%) of all City Campsite removals in any given Quarter and not less than forty percent (40%) of all City Campsite removals in any given Year (within City limits regardless of who owns the property) address Campsites obstructing City Sidewalks.

    **1.** In any Quarter where the total number of Campsites assessed as obstructing the Sidewalk as set forth in V.A is fewer than thirty-five percent (35%) of the total removals performed by the City in that Quarter, the City will have satisfied its obligations under this section by removing all Campsites assessed as obstructing Sidewalks in that Quarter.

    **2.** When the percentage of Campsite removals in a particular Quarter is lower than thirty-five (35%) pursuant to Section V.B.1, the remaining quarterly percentage requirements for the Year will continue to apply to all other Quarters, and the forty percent (40%) annual percentage requirement for the Year will instead apply to the total percentage of those remaining Quarters in which the quarterly percentage of Campsite removals was not adjusted pursuant to Section V.B.1.

**C. Accommodations:** Obstructions to the Sidewalk where an individual with a Mobility Disability is seeking an accommodation as outlined in Section III.D. will automatically be prioritized within the removals required by Section V.B.

**D. Minimum:** The City's minimum annual funding requirements are fully set forth in Section VII. of this Agreement. In addition to the percentage removal requirements of Section V.B. and the minimum annual funding requirements of Section VII., the City will remove in each Year no fewer than five hundred (500) identified Campsites that are determined to be obstructing Sidewalks. Notwithstanding the foregoing, in any Year where the total number

---

[2] The City's reporting system removes duplicate reports. Duplicate reports are subsequent reports within an approximate area of a pre-existing created work order. Once an assessment/work order is completed and clears the City's system, new reports create a new work order at that location (and are not treated as a duplicate). The five business days are calculated from the date of the report that created the work order at a particular location.

Exhibit 1

of Campsites assessed as obstructing Sidewalks is fewer than five hundred (500), then this requirement is met by removing all Campsites obstructing Sidewalks.

E. **Instruction:** The City will ensure that contractors employed by the City (Rapid Response, outreach workers, or other hired contractors) will instruct those who are displaced by Campsite removals that they cannot relocate on any Sidewalk.

F. **Transparency:** The City will provide a public facing website that includes search functionality to access data including the specific dates and locations of Campsite removals.

## VI.    SIGNS

The City will install signs, in substantially the form set forth in Exhibit B, informing people that they are not allowed to place obstructions in the Sidewalk on a City block when the following conditions are met:

A. The City has posted and removed more than three (3) Campsites obstructing the Sidewalk on a particular Block during a given Month; and

B.  The City receives at least one (1) ADA accommodation request for the same Block meeting the requirements of VI.A. during the same Month.

## VII.    ANNUAL FUNDING COMMITMENT

The Impact Reduction Program will be the primary City program responsible for implementation of Sections III. - IV. of this Agreement. Impact Reduction Program activities funded by the City consist of: receipt and processing reports/complaints of Campsites; identification, assessments, posting and removals of Campsites; debris removal at Campsites; storage of removed materials; and other related activities to address and respond to Campsites in the City. The City intends to adequately fund its obligations under this Agreement. However, in all cases, including in the event that City revenues become limited due to future economic conditions, the City shall be obligated to fund the foregoing Impact Reduction Program activities for Fiscal Year 2023-2024 at no less than $8,000,000, and at no less than $3,000,000 for the following four fiscal years (2024-2025, 2025-2026, 2026-2027, and 2027-2028).

## VIII.    QUARTERLY REPORTING

A. **Time for Reporting.** Beginning at the close of the first full Quarter following the Effective Date, the City will provide quarterly written reports to Plaintiffs summarizing the City's

Exhibit 1

compliance with Sections V. - VII. of this Agreement. The City will have forty-five (45) days after the close of each Quarter to prepare and deliver these reports.

**B. Information in Reports.** The Quarterly Report shall include summary information detailing:

    a. Average number of business days between reported Campsite[3] and completed assessment of Campsites assessed as obstructing Sidewalks;

    b. Percentage of reported Campsites assessed as obstructing Sidewalks that were assessed within five business days;

    c. Total number of removals;

    d. Total number of removals addressing Sidewalk obstructions;

    e. Percentage of total removals that addressed Sidewalk obstruction;

    f. Number of ADA accommodation requests made;

    g. Number of ADA accommodation requests addressed with removal.

    h. Fiscal year budget allocation for Impact Reduction Program.

    i. Total number of Blocks where City removed three Campsites, including one where an ADA accommodation request was made, in a single Month.

    j. Total number of Blocks where signage has been added and location of signage.

## IX.   DISPUTE RESOLUTION

**A. Meet and Confer Obligation.** If any Party believes that a dispute exists relating to any violation of or failure to perform any of the provisions of the Settlement Agreement ("Dispute"), it shall notify the other Party in writing and describe the alleged violation or failure to perform with particularity. The Party alleged to have committed the violation or failure to perform shall provide a written response within ten (10) business days of receipt of such notice, and shall have a period of thirty (30) days, from receipt of notice from the other Party that they have violated or failed to perform, to cure the alleged violation or failure to perform. If the Party alleging a violation or failure to perform maintains that the violation or failure to perform has not been cured, the Parties shall meet and confer, in person or by telephone, and attempt to resolve the dispute on an informal basis for a period of no more than thirty (30) days following the expiration of the time to cure the alleged violation, unless the Parties mutually agree to an extension.

**B. Mediation Obligation.** If the Parties are unable to resolve a Dispute through the meet and confer process described in the prior section, the Parties shall mediate in an effort to resolve the matter. The Parties shall have thirty (30) days to jointly select a mediator. The

---

[3] Consistent with Footnote 2, the calculations in VIII.B.a-b will be calculated from reports that create a work order, but excluding duplicates.

Exhibit 1

mediation shall be conducted in the manner determined by the mediator, and the Parties shall engage in good faith efforts to resolve the Dispute through such mediation.

C. **Settlement Agreement Enforcement Following Mediation.** If the Parties are unable to resolve a Dispute regarding either Party's performance under the Settlement Agreement through the mediation process described in Section IX.B, either Party may provide the other with written notice of its intent to enforce the Settlement Agreement. Thereafter, either Party may file a motion with the District Court to enforce the Settlement Agreement.

D. **Governing Law.** The terms of this Agreement shall be construed pursuant to the laws of the State of Oregon with respect to principles of common law contract interpretation.

## X.    COMPENSATORY DAMAGES

In exchange for the Release of Claims set forth in Section XII, below, within sixty (60) days of the Effective Date, the City will pay each Plaintiff the sum of $5,000. These payments shall be in full and final settlement of Plaintiffs' claims that are being released in Section XII.

## XI.    ATTORNEYS' FEES, EXPENSES AND COSTS

A. **Attorneys' Fees.** The City agrees that Plaintiffs are the prevailing party in the Lawsuit and are entitled to an award of reasonable attorney fees, costs and expenses, in an amount to be determined by the Court.

B. **Attorneys' Fees, Expenses, and Costs Arising from Dispute Through Court Motion.** If any one or more of the Plaintiffs in this Lawsuit are the prevailing party in any motion, suit or other proceeding brought with respect to this Settlement Agreement, or in any appeal therefrom, they shall be entitled to reasonable attorneys' fees, costs, and expenses in accordance with the standards of the ADA.

## XII.    RELEASE OF CLAIMS

In consideration for the City's commitments set forth in the Settlement Agreement, each of the Plaintiffs, on behalf of themselves and their respective heirs, assigns, successors, executors, administrators, agents, and representatives in their capacity as such ("Releasing Parties") will, upon the Effective Date, fully and finally release, acquit, and discharge the City from any and all claims, allegations, demands, charges, complaints, actions, lawsuits, rights, liabilities, losses, injuries, obligations, disputes and causes of action (collectively, "Claims") of any kind, and whether known or unknown, suspected or unsuspected, asserted or unasserted, or actual or contingent, for monetary relief and injunctive, declaratory, or other non-monetary relief, however described, that (a) were alleged in the Lawsuit or (b) are based on any actual or alleged violation of the ADA, Section 504 or Related Laws arising from any facts or occurrences at any time prior to the Effective Date and through the end of the Term of the Agreement (the "Released Claims"). Such Released Claims, however, shall not include any Claims to enforce the terms of the Settlement Agreement, any Claims for relief arising from the City's violation of any term of the Settlement Agreement, any Claims for personal injury or injury to property that are specific to a Plaintiff (that is, involve injury or damage to a particular Plaintiff, as opposed to some injury or damage that is shared in common by all or numerous persons with Mobility Disabilities), or any Claims that are otherwise unrelated to the purpose and intent of this Settlement Agreement.

Exhibit 1

## XIII.    JURISDICTION

The U.S. District Court will retain jurisdiction of this Lawsuit to enforce the settlement for the Term of the Agreement.

## XIV.    DRAFTING OF THIS AGREEMENT AND COOPERATION

The Parties acknowledge and agree that this Agreement shall for all purposes be deemed jointly drafted and fully negotiated, and as a result, shall not in any manner be interpreted in favor of, or against, any particular Party by reason of being the drafting Party.  Any rule of law that would require interpretation of any ambiguities or uncertainties in this Agreement against one of the Parties shall have no application and is hereby expressly waived.

The Parties and their counsel shall cooperate with each other to prepare and jointly present to the Court such pleadings or other materials as may be reasonably necessary or appropriate to effectuate the provisions of this Agreement, including but not necessarily limited to pleadings or other requests for an order(s) of the Court to retain jurisdiction of this Lawsuit as provided in Section XIII and to allow Plaintiffs to seek and obtain an award of reasonable attorney fees, costs and expenses as provided in Section XI.A.

## XV.    AUTHORITY

Each of the Parties represents, warrants, and agrees that they have the full right and authority to enter into this Agreement, and that the person executing this Agreement has the full right and authority to commit and bind such Party.

## XVI.    EXECUTION BY FACSIMILE AND IN COUNTERPARTS

This Agreement may be executed by the Parties in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.  Facsimile and PDF signatures shall be accepted as originals.

## XVII.    FORCE MAJEURE

The obligations of the City set forth in this Agreement may be postponed if the postponement is caused by or attributable to a force majeure (that is, due to acts of God, war, government regulations (other than regulations by the City), terrorism, disaster (including power outages), strikes, civil disorder, government declared fiscal emergency (other than one declared by the City), severe weather, very unhealthy air quality, or an emergency beyond the City's control) that makes it illegal or impossible for the City to perform relevant work.  Under this provision, the City's obligations may be tolled for the period of the force majeure's effect.

## XVIII.    GOVERNING BOARD APPROVAL

The Parties understand and agree that this Settlement Agreement is subject to review and approval by the City Council for the City of Portland, and that the Parties shall have no obligation hereunder unless and until such approval is obtained and the required ordinance is adopted.  In the event the City Council for the City of Portland shall decline to approve this Settlement Agreement, this Settlement Agreement shall be null and void, all obligations hereunder shall cease and the Parties shall be returned to the status quo existing on the date this Settlement Agreement was signed.  The

Exhibit 1

City shall submit this Settlement Agreement to the City Council for its approval within 30 days of the Parties' and Parties' Counsel's execution of same.  In the event that the City Council fails to approve this Settlement Agreement within 60 days of presentation, either Party may give written notice to counsel for the other Party that it withdraws its agreement to this Settlement Agreement, in which case this Settlement Agreement shall immediately be null and void and all obligations hereunder shall cease.

IN WITNESS WHEREOF, the Parties hereto have approved and executed this Agreement on the dates set forth opposite their respective signatures.


EXECUTED by the Parties as follows:

DATED: _May 31_, 2023    THE CITY OF PORTLAND

By: _____
Robert Taylor

Its: _City Attorney_

DATED: _May 22_, 2023    DAVIS WRIGHT TREMAINE LLP


By: _____
John DiLorenzo, Jr.

Attorneys for Plaintiffs


DATED: _____, 2023    By: _____
Tiana Tozer

DATED: _22 May_, 2023    By: _____
Philip Rhodes

9

Exhibit 1

City shall submit this Settlement Agreement to the City Council for its approval within 30 days of the Parties' and Parties' Counsel's execution of same. In the event that the City Council fails to approve this Settlement Agreement within 60 days of presentation, either Party may give written notice to counsel for the other Party that it withdraws its agreement to this Settlement Agreement, in which case this Settlement Agreement shall immediately be null and void and all obligations hereunder shall cease.

IN WITNESS WHEREOF, the Parties hereto have approved and executed this Agreement on the dates set forth opposite their respective signatures.

EXECUTED by the Parties as follows:

DATED: _____, 2023    THE CITY OF PORTLAND


By: _____

Its: _____

DATED: _5 - 23_____, 2023    DAVIS WRIGHT TREMAINE LLP


By: _____
    John DiLorenzo, Jr.

Attorneys for Plaintiffs


DATED: _5|23____, 2023    By: _____
                             Tiana Tozer

DATED: _____, 2023    By: _____
                                  Philip Rhodes

9

Exhibit 1

DATED: May 2, 2023    By: _____

Barbara Jacobsen

DATED: 05-22, 2023    By: _____

Dane Southard

DATED: May 22nd, 2023    By: _____

Lorien Ilena Welchoff

DATED: 5/23/23, 2023    By: _____

Pauline Long

DATED: May 22, 2023    By: _____

Mark Barnhill

DATED: 5/23, 2023    By: _____

Steve Jackson

DATED: 5/23/22, 2023    By: _____

Keith Martin

DATED: May 22, 2023    By: _____

Steven Rebischke

10

Exhibit 1



Figure B-2: Zones of the Sidewalk Corridor

Exhibit 1



# THIS SIDEWALK IS FOR PEDESTRIAN MOVEMENT ONLY

# PLEASE KEEP CLEAR

THIS SIDEWALK IS DESIGNATED FOR PEDESTRIAN
USE ONLY PER CITY CODE 14A.50.030

www.PortlandOregon.gov

Exhibit 1