**JOHN DILORENZO, JR.,** OSB #802040
johndilorenzo@dwt.com
**AARON K. STUCKEY**, OSB #954322
aaronstuckey@dwt.com
**CHRISTOPHER SWIFT**, OSB #154291
chrisswift@dwt.com
**SETH R. TANGMAN**, OSB #211456
moetangman@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TIANA TOZER, PHILIP RHODES, BARBARA JACOBSEN, DANE SOUTHARD, LORIEN ILENA WELCHOFF, PAULINE LONG, MARK BARNHILL, STEVE JACKSON, KEITH MARTIN, and STEVEN REBISCHKE on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>CITY OF PORTLAND,<br><br>    Defendant. | Case No. 3:22-cv-1336-MO<br><br>**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS** |

**LR 7-1 CERTIFICATION**

    Counsel for Named Plaintiffs Tiana Tozer, Philip Rhodes, Barbara Jacobsen, Dane

Southard, Lorien Ilena Welchoff, Pauline Long, Mark Barnhill, Steve Jackson, Keith Martin, and

Page 1 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Steven Rebischke (collectively, "Plaintiffs") certifies that Plaintiffs and Defendant City of Portland (the "City") agreed by stipulation that the Court would determine reasonable attorney fees. *See* Dkt. 26 at Ex.1, § XI(A).

## MOTION

Pursuant to Fed. R. Civ. P. 54(d), Plaintiffs move the Court for an order awarding Plaintiffs their reasonable attorney fees and costs pursuant to 42 U.S.C. §§ 12205, 12133, and 29 U.S.C. § 794a(b). Specifically, Plaintiffs request that the Court award them $676,556.50 in attorney fees, $652.00 in costs, $26,525.50 in fees-for-fees, and $13,000.00 in expert fees—for a grand total of $716,734.00.

This motion is based on the records and files in this action, the points and authorities below, and the supporting declarations of John DiLorenzo ("DiLorenzo Decl."), Aaron Stuckey ("Stuckey Decl."), Christopher Swift ("Swift Decl."), Seth Tangman ("Tangman Decl."), Dr. Eric Fruits ("Fruits Decl.") and James McDermott ("McDermott Decl."), filed contemporaneously with this motion.

### I.    ARGUMENT

#### A.    Plaintiffs are entitled to recover their attorney fees.

Plaintiffs' Complaint asserted claims for injunctive relief against the City arising out of the City's failure to maintain its sidewalks and pedestrian right of ways clear of obstructions—specifically, clear of tent encampments and attendant debris—under Section 12205 of the Americans with Disabilities Act of 1990 and Section 794a(b) the Rehabilitation Act of 1973. A prevailing plaintiff is entitled to reasonable attorney fees under those statutes. *See also Updike v. Multnomah Cty.*, 2020 WL 4736461 (D. Or. Aug. 14, 2020) (awarding fees pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b)).

Plaintiffs reached a settlement with the City securing broad-sweeping City-wide relief requiring the City to devote significant resources to comply with the Americans with Disabilities Act and the Rehabilitation Act by maintaining its sidewalks and pedestrian rights of way clear of

Page 2 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

obstructing tent encampments and attendant debris, among other relief (the "Settlement Agreement"). *See* Dkt. 26. In the Settlement Agreement, the City conceded that Plaintiffs are the prevailing parties and the City agreed Plaintiffs are entitled to their reasonable attorney fees. *Id.* at Ex. 1, § XI(A). Accordingly, pursuant to federal law and by agreement of the City, Plaintiffs are entitled to recover their reasonable attorney fees and costs in this action.

      **B.**      **Summary of fees requested.**

Plaintiffs request fees for substantive work on the underlying case as follows:

**Work performed in 2022**

| Timekeeper | Hours | Hourly Rate | Amount |
|---|---|---|---|
| John DiLorenzo[1] | 305.60 | $855 | $261,288.00 |
| Aaron Stuckey | 103 | $670 | $69,010.00 |
| Christopher Swift | 106.30 | $515 | $54,744.50 |
| Seth Tangman | 52.60 | $465 | $24,459.00 |
| *2022 Total* | 567.50 | | $409,501.50 |

**Work performed in 2023**

| Timekeeper | Hours | Hourly Rate | Amount |
|---|---|---|---|
| John DiLorenzo | 181.20 | $955 | $173,046.00 |
| Aaron Stuckey | 124.30 | $750 | $93,225.00 |
| Christopher Swift | .8 | $515 | $412.00 |
| Seth Tangman | .8 | $465 | $372.00 |
| *2023 Total* | 307.10 | | $267,055.00 |

The total fees sought in this petition for substantive work on the underlying case are $676,556.50. Counsel, however, billed $897,410.59 in this case. Accordingly, Plaintiffs offer an across the board reduction in fees sought from the City of roughly 24.6%, which reflects

---

[1] The DiLorenzo Decl. sets forth the listed timekeepers' qualifications and testifies in support of the reasonableness of their rates and the time expended on this matter. Moreover, Exhibit C to the DiLorenzo Decl. sets forth the individual time entries aggregated to create the tables for work performed in 2022 and 2023 related to the case.

Page 3 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

adjustments for fees that should not be shifted to the City under controlling law. DiLorenzo Decl. at ¶ 23, Ex. C.

**Work performed related to fee petition**

Plaintiff also seeks "pursuit fees" or "fees-for-fees" incurred in presenting the instant fee petition to the Court. For clarity, Plaintiff has broken out the pursuit fees sought and has summarized them in the table below:

| Timekeeper | Hours | Hourly Rate | Amount |
|---|---|---|---|
| John DiLorenzo | 3.7 | $955 | $3,533.50 |
| Aaron Stuckey | .5 | $750 | $375.00 |
| Christopher Swift | .8 | $515 | $412.00 |
| Seth Tangman | 37 | $465 | $17,205.00 |
| **Fee Petition Total**[2] | 42 | | $21,525.50[3] |

C.      **The Lodestar method of calculating reasonable attorney fees.**

"The preferred method of calculating reasonable attorneys' fees is the 'lodestar method.'" *Updike*, at 2020 WL 4736461 at *1 (citation omitted). The lodestar is "the product of **[1]** the number of hours reasonable spent on the litigation multiplied by **[2]** a reasonable hourly rate" and represents "an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* (citations omitted; emphasis in original). For the reasons set forth below, the number of hours spent by Plaintiffs' counsel and sought in this fee petition are reasonable, and when multiplied by the reasonable hourly rates of those attorneys, Plaintiffs seek an award of $676,556.50 in fees incurred in prosecuting their claims.

---

[2] This table is derived using the information aggregated from the time entries located at Exhibit D to the DiLorenzo Decl.

[3] Plaintiffs anticipate that they will spend an additional $5,000 on reply, the evidence of which Plaintiffs will submit on reply, and request that that amount be added to the Court's award.

Page 4 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### 1. The reasonableness of hours expended on the litigation.

Under the lodestar method, hours will only be shifted and included in a fee award to the extent they were reasonably expended. *Id.* Attached as Exhibit C to the DiLorenzo Decl. is a spreadsheet of time entries sought to be recovered from the City in this litigation. To be clear, the spreadsheet does not contain the entirety of time entries billed by Davis Wright Tremaine, but rather include only the time entries that Plaintiffs believe are properly shifted to the City pursuant to Ninth Circuit jurisprudence. The spreadsheet exhibit was created by directing Davis Wright Tremaine's billing department to provide original invoices for the $897,410.59 billed to Citizens for Accountability Trust and Reform ("CATR"). DiLorenzo Decl. at ¶¶ 20, 21. The invoices were then reviewed by associate Seth Tangman and a team of staff to ensure accuracy and compliance with billing best-practices and judicial expectations, and to identify time entries that were determined to not be shiftable under controlling case law.[4] *Id.*. Mr. DiLorenzo and Mr. Tangman then went through the invoices entry-by-entry to identify time entries that they determined not to be shiftable to the City under applicable jurisprudence. Time deducted from the entries and excluded from this petition includes:

- Time spent on purely clerical, secretarial, or administrative tasks.
- Time spent by multiple attorneys in meetings or conferences, except where there was a specific need for multiple attorneys to be present at the event.[5]

---

[4] No time expended on these activities is sought pursuant to this fee petition. DiLorenzo Decl. at ¶ 21.

[5] Plaintiffs anticipate that the City will object to Plaintiffs having multiple counsel present at all negotiation sessions and meetings with the City, and to the time spent preparing for those meetings. These objections are meritless—at every single negotiation session or meeting between Plaintiffs' counsel and the City, the sessions or meetings were attended by more attorneys on behalf of the City than by counsel representing Plaintiffs, and the City often specifically requested that counsel for the Plaintiffs perform certain tasks. *See* DiLorenzo Decl. at ¶ 22. It makes sense that multiple attorneys would be attending each such event on behalf of both parties—the parties were negotiating a complex settlement agreement under federal law that would have City-wide effects touching upon the daily lives of nearly all Portland citizens. Moreover, it is logical that multiple attorneys would be present to negotiate and ultimately finalize such a broad settlement with a complex and expansive scope, and that the parties would spend many months conceptualizing, negotiating, and drafting.

Page 5 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

- Time spent on intra-office communications, except the highest billing rate was retained.
- Time spent on purely political tasks.
- Time spent assisting with fundraising.

Mr. DiLorenzo and Mr. Tangman then aggregated the total amount of money associated with each such entry and reduced the fees sought to $676,556.50—a 24.6% discount reduction on total fees billed. DiLorenzo Decl. at ¶ 23. Voluntarily fee reductions are an accepted method for arriving at hours reasonably expended and are viewed favorably by the Court. *See Muller v. Country Mut. Ins. Co.*, 2017 WL 6209701 (D. Or. Dec. 8, 2017) (accepting as reasonable and applying moving party's 15% reduction of hours to account for hours expended that were not properly shiftable under applicable jurisprudence).

        **a.    The time billed was reasonable in light of the circumstances and demands of the case.**

Notwithstanding Plaintiffs' voluntary reduction of 24.6% of fees billed, Plaintiffs also retained the expert services of James McDermott to opine on the reasonableness of the effort, work, and time billed by Plaintiffs' counsel. *See* McDermott Decl. Mr. McDermott opines that the hours sought to be recovered are reasonable "[g]iven the complexity of the statutes at issue in this case, the legal work product produced to date, the widespread media scrutiny and coverage used to great effect to achieve client goals, the settlement strategy and actions of the City, and the excellent City-wide relief secured by Plaintiffs[.]" *Id.* at ¶ 35.

Indeed, Mr. McDermott noted the extensive work performed by counsel to secure litigation funding on behalf of a set of plaintiffs that lacked funding to pursue their claims. *Id.* at ¶¶ 36-38. Once, funding was secured, Mr. McDermott then describes as reasonable the initial pleading stages, vetting of the Plaintiffs, and parallel track discussions with the City to front-run the eventual Settlement Agreement. *Id.* at ¶¶ 39-43.

After litigation began, Mr. McDermott opines that the initial settlement negotiations and case strategy research and development performed by Christopher Swift was reasonably

Page 6 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

expended. *Id.* at ¶¶ 45-46. Mr. McDermott expressly noted as reasonable the decision to exclude senior associates Mr. Swift and Mr. Tangman from the settlement negotiations to keep costs down. *Id.* at ¶ 47.

Thereafter, Mr. McDermott opined that the "City-requested legal work and theories" performed by Mr. DiLorenzo and Mr. Stuckey were reasonable. *Id.* For instance, the City requested that Plaintiffs—not the City itself—develop a legal strategy in order to implead Multnomah County as a means to expand resources to fund a settlement despite the fact that Plaintiffs did not have a viable claim against that entity. Nonetheless, Plaintiffs performed that work as a means to advance settlement negotiations and provide leverage to the City, through various legal theories and media pressures of which the City appears to have taken advantage. *Id.* at ¶¶ 47-55. Indeed, Plaintiffs' efforts in this regard provided the City a legal theory through which to recoup investments it was sending to the County in order to divert those resources towards settlement, and even provided the City with a legal theory through which to impose third-party liability on the County should it so choose. *Id.*

The protracted settlement negotiations between Plaintiffs and the City were also reasonable in the view of Mr. McDermott. *Id.* at ¶¶ 56-65. Indeed, he opined that the $20 million dollars contributed by the City to enforce "the equivalent of a City-wide injunction prohibiting tent camping in the pedestrian rights-of-way" was an "excellent result[.]" *Id.* ¶¶ 11, 58. Indeed, in Mr. McDermott's view, "[t]he requested attorneys' fees of approximately $676,556.50 is less than 1/20th of the $20 million to enforce the expansive City-wide injunctive relief secured [. . .] is an excellent result obtained in light of the costs of legal representation" and that "the work effort of the Plaintiffs' attorneys was reasonable and the attorney fees requested are likewise reasonable." *Id.* at ¶ 66. In Mr. McDermott's opinion, but for the work of Plaintiffs' counsel in settlement negotiations, fees and costs could have exploded "into the millions of dollars" given the fact that disposition of the case would have likely required "a trial of six to eight weeks[.]" *Id.* at ¶ 65.

Page 7 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

In sum, Mr. McDermott opined that time sought in this motion and billed by Mr. DiLorenzo, Mr. Stuckey, Mr. Swift, and Mr. Tangman related to the case was reasonable. *Id.* at ¶¶ 11, 34-65.

Moreover, Mr. McDermott noted that he was not the only party impressed by the skill of Plaintiffs' counsel and the result obtained. Mr. McDermott watched the City Council's deliberations of the Settlement Agreement and noted that "Commissioner Ryan lauded '[t]he settlement [as] a step in the right to direction to ensure that all Portlanders can navigate our sidewalk safely'" *Id.* at ¶ 61.

Mr. McDermott noted "Commissioner Gonzales was even more effusive: 'I want to thank the plaintiffs in this case and all that testified today. The lawsuit should not have been necessary for the city to do what is right. But I'm glad you filed it. We have been too slow in addressing unsanctioned camping and crime on our streets. Our society has failed to address effectively debilitating hard drug use and untreated mental illness, and we see that manifested on our streets. It disproportionately impacts our disabled, our children, our seniors, our most vulnerable, so I fully support the settlement. It's one step in a long journey to retake our city.'" *Id.* at ¶ 62.

Mr. McDermott believes, however, that,"[t]he most striking comments . . . came from Mayor Wheeler. Mayor Wheeler stated: '[I]t's very common for me to get sued in my role as the mayor of this city, and I don't always welcome being sued. This is a notable exception and I had the opportunity to meet with some of the plaintiffs in court, and I said then what I will say now, which is, I agree with you. I agree that people should have rights to access our sidewalks without impediment, regardless of whether they have disabilities or not. I believe this is something that all people in this community should enjoy, but the ADA is very explicit about the rights of people with disabilities, and I believe those rights were impinged by the large number of obstructions on our sidewalks.'" *Id.* at ¶ 63.

Mayor Wheeler did not end there, and expressly called out the work of Plaintiffs' counsel, noting that he "*also believe[d] that the way [the case] was handled by the Plaintiffs*

Page 8 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*and the lawyers, the attorneys for the Plaintiffs, was an honorable way to go about this. I also want to acknowledge that this settlement today does include reasonable attorneys' fees determined by the Court for Plaintiffs' lawyers. I think that is entirely fair under this settlement, and I'm glad that my colleagues have already voted to support that*." *Id.* at ¶ 64 (emphasis added).

The City Council's and the Mayor's admiration for the result obtained and the skill in which Plaintiffs' counsel operated is also shared by Dr. Eric Fruits, Secretary Treasury of CATR—the litigation funder in this case—a sophisticated consumer of legal services with extensive experience with other lawyers in the market.[6] *See* Fruits Decl. at ¶¶ 3, 10, 13. Indeed, Dr. Fruits "believe[s] the results obtained by plaintiffs' counsel were extraordinary in so far as the settlement accomplished as much as they could have hoped to attain had the case been litigated to an ultimate conclusion." *Id.* CATR "ranks [Plaintiffs' counsel] in the very top rungs of [lawyers] with which he has worked." *Id.* at ¶ 13.

Accordingly, the Court should agree with Mr. McDermott, the Portland City Counsel, Mayor Wheeler, and Dr. Fruits and determine that the hours sought in this motion were reasonably incurred, especially in light of Plaintiffs' voluntary reduction of 24.6% of fees billed, and the extraordinary result which remedied disability rights that the Mayor himself admits the City "impinged."

                          **b.**      **Time billed for media-related tasks are reasonable in light of the circumstances of this case.**

Typically, "contact with the media is an activity 'that attorneys generally do at their own expense.'" *Wolfe*, 2013 WL 6002391, at *7 (quoting *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir.

---

[6] *See Blalock v. Maximum Sec. Alarm, Inc.*, 2012 WL 5467531, at *2 (D. Or. Nov. 9, 2012) (finding unpersuasive for purposes of attorney fee petition client declaration where client "cannot attest to the prevailing rate in the community nor does he assert [. . .] a basis to compare [counsel's] services to those of similar lawyers.") Here, Dr. Fruits does have a basis to compare legal services of its lawyers to similar lawyers and has knowledge of the prevailing legal rates in the community as a sophisticated user of legal services.

Page 9 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

1995)). "Media contact is compensable, however, where it is 'directly and intimately related to the successful representation of a client.'" *Wit v. United Behavioral Health*, 578 F.Supp.3d 1060, 1087 (N.D. Cal. 2022) (quoting *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)). "Such work must 'contribute, directly and substantially, to the attainment of [] litigation goals.'" *Id.* (quoting *Pollar v. Judson Steel Corp.*, 1985 WL 312, at *23 (N.D. Cal. May 21, 1985)).

In *Wit*, the court granted Plaintiffs' motion for attorney fees and costs in part, and shifted fees for time expended by class counsel for certain media relations, including time spent: to "locate additional class members[]; time spent on press releases and interviews of Class Counsel that communicated key developments in the case to the public and the class; meetings and communications related to those interviews and press releases; time spent drafting an internal memorandum 'outlining any legal ethics issues that could constrain the statements counsel could make while trial was ongoing;' time spent advising class members regarding their own contact with the media; and time spent responding to inquiries from class members, the media and behavioral health advocates regarding the Court's decision following the bench trial." *Wit*, 578 F.Supp.3d at 1087-88 (quotation omitted). The Court expressly stated that the shifted time was "compensable" specifically because it "contributed directly and substantially to the effective representation of the Class." *Id.* at 1087. The *Wit* case is not an outlier—Courts frequently shift fees for media relations when appropriate.[7]

---

[7] *See, e.g*, *Flores v. Sessions*, 2017 WL 8943169, at *7 (C.D. Cal. Nov. 14, 2017); *Pollinator Stewardship Council v. U.S. Env't Prot. Agency,* 2017 WL 3096105, at *11 (9th Cir. June 27, 2017); *O'Bannon v. Nat'l Collegiate Athletic Assoc.*, 2016 WL 1255454, at *8 (N.D. Cal. Mar. 31, 2016); *Good Morning to You Prod. Corp. v. Warner/Chappel Music, Inc.*, 2016 WL 6156076, at *15 (C.D. Cal. Aug. 16, 2016); *Paeste v. Government of Guam*, 624 Fed. App'x 488, 491 (9th Cir. 2015); *Pierce v. County of Orange*, 905 F.Supp.2d 1017, 1028-29 (C.D. Cal. 2012); *Stormans Inc. v. Selecky*, 906 F.Supp.2d 1093, 1102 (W.D. Wa. 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 929, 969 (C.D. Cal. Mar. 29, 2010); *Californians for Disability Rights v. Cal. Dept. of Transp.*, 2010 WL 8746910, at *18 (N.D. Cal. Dec. 13, 2010); *Nat'l Fed. Of the Blind v. Target Corp.*, 2009 WL 2390261, at *4 (N.D. Cal. Aug. 3, 2009); *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d. 1095, 1101 (N.D. Cal. Apr. 10, 2008); *U.S. v. Aisenberg*, 247

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Here, this case was brought to extract City-wide policy changes from the City to respect the rights of their citizens with mobility disabilities—rights that would not have been respected absent this lawsuit. Given the nature of the relief sought, the fact that the City Council would have to approve any final settlement and policy changes, and the fact that the subject-matter of the case concerned a hot-button social issue—persons experiencing houselessness—media relations were unavoidable, and in fact necessary and "accretive" to encourage the City to recognize the federal rights of its citizens. McDermott Decl. at ¶¶ 43, 51, 55, and 60.

Indeed, Mr. McDermott opines that "in cases of great public importance, an attorney who is not adequately representing his client in the media—either directly or though advising on media statements and appearances—is not fully representing his client" and that "strategic use of media communications can in certain cases be very effective in attaining litigation goals." *Id.* at ¶ 43. Mr. McDermott opines "that this was such a case." *Id.* Mr. McDermott further noted that the use with which the City Council, candidates for office, the Mayor, and the Plaintiffs themselves were using or interviewed by the media, is indicate of the "accretive" use of the media in this case by counsel. *Id.* at ¶¶ 42, 44, 55.

In effect, Plaintiffs' counsel utilized media to great effect to advance and attain their "litigation goals." *Id.* at ¶ 43. The use of the media represented only about 8% of the total fees sought in this petition, are "properly recoupable" and was "strategically accretive." *Id.* at ¶ 44. Time spent on media relations and press conferences are properly shiftable in this case under Ninth Circuit precedent.[8]

---

F.Supp.2d 1272 (M.D. Fla. 2003), *rev'd in part*, 358 F.3d 1327 (11th Cir. 2004); *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999); *Davis*, 976 F.2d at 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993); *Pollar*, 1985 WL 312, at *23 (N.D. Cal. May 21, 1985).

[8] For the Court's convenience, time entries identified as media related on Exhibit C to the DiLorenzo Decl. are written in purple font.

Page 11 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## 2. The reasonableness of rates charged.

In the District of Oregon, it is well settled that "[t]he prevailing market rate in the community is indicative of a reasonable hourly rate. The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonable comparable skill and reputation." *Wolfe v. City of Portland*, 2013 WL 6002391, at *7 (D. Or. Nov. 8, 2013) (quoting *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262-63 (9th Cir. 1987).

"As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic Survey." *Chatelain v. Country Mut. Ins. Co.*, 2017 WL 6663901, at *6 (D. Or. Dec. 29, 2017). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." *Id.* "Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey." *Id.* (citation omitted); *see also, Blalock v. Maximum Sec. Alarm, Inc.*, 2012 WL 5467531, at *1-3 (D. Or. Nov. 9, 2012); *Muller*, 2017 WL 6209701, at * 7-8. The 75th percentile, however, is not a ceiling on rates and the Court will award rates in excess of the 75th percentile where warranted. *See Chatelain*, 2017 WL 6663901 (D. Or. Dec. 29, 2017) (awarding rates in excess of the 75th percentile where the attorneys had "significant experience" litigating similar cases). While the Court has relied on the 75th percentile of the OSB Economic Survey as a measuring point in the past, the 2022 OSB Economic Survey no longer contains that information.

Below is a lawyer-by-lawyer breakdown discussing the reasonableness of the rates. Each of the lawyers—as discussed below—have significant experience in class action litigation as well as suing the state, county, and local governments in order to effect change in the community. Indeed, the lawyers representing Plaintiff are an impact litigation team that secured the largest jury verdict in the state history against the State of Oregon, and frequently secure

Page 12 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

victories striking down statutes, rules, regulations, and ordinances, as well as defending those rulings before appellate courts. *See, e.g.*, *County of Linn v. State of Oregon*, C.A. No. 16CV07708 (Linn Co. Cir. Ct. 2016); *Anderson v. City of Portland*, C.A. No. 1112-15957 (Mult. Co. Cir. Ct. 2011); *Masonry Building Owners of Oregon v. Ted Wheeler, et al.*, 394 F.Supp.3d 1279 (D. Or. 2019); *Valeant Pharma. Int'l v. State of Oregon*, C.A No. 06C11571 (Marion Co. Cir. Ct. 2006); and *City of Portland v. Bartlett*, C.A. No. 16CV01529 (Mult. Co. Cir. Ct. 2016), 369 Or. 606 (2002). *See also* DiLorenzo Decl. at ¶ 4. In short, Plaintiffs' counsel specialize in forcing state and local governments to do what is right through impact litigation such as this case, and command their standard rates in the market for doing the work. Indeed, the rates charged by the below lawyers are reasonable and in accordance with what the market charges for lawyers of comparable skill, expertise, and experience.[9] Accordingly, the Court should award the sought hourly rates to each of the below attorneys.

### a.    John DiLorenzo

Mr. DiLorenzo's rate for work performed in 2022 is $855, and his rate for work performed in 2023 is $955. *See* DiLorenzo Decl. at Ex. C. Both rates are reasonable. McDermott Decl. at ¶¶ 13-21. Mr. McDermott found that both rates "are within the range of prevailing litigation market rates according to the 2022 Oregon State Bar Economic Survey" for similarly experienced and situated lawyers even though both rates are "at the top of the range." Mr. DiLorenzo has been practicing law for 43 years. DiLorenzo Decl. at ¶ 2.

Mr. McDermott noted that Mr. DiLorenzo's rates are reasonable "given his decades of experience and track record as one of the most accomplished and impactful litigators in the state." McDermott Decl. at ¶ 21. Mr. McDermott noted several cases of great public importance

---

[9] Mr. McDermott opines that all of the hourly rates charged by Plaintiffs' counsel were reasonable in this case with the exception of the 2023 rates charged by Christopher Swift, and Seth Tangman. McDermott Decl. at ¶¶ 11, 21, 24, 27-28, and 32-33.

Page 13 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

as indicative of this skill, *Id.* at ¶¶ 15, 18, as well as noting that Mr. DiLorenzo is recognized as extremely skillful within the industry given voluminous awards and recognitions. *Id.* at ¶ 13.

A detailed description of Mr. DiLorenzo's accomplishments and qualifications can be found in the McDermott Decl. at ¶¶ 13-21, and the DiLorenzo Decl. at ¶¶ 2, 4, and are incorporated by reference.

### b.     Aaron Stuckey

Mr. Stuckey's rate for work performed in 2022 is $670, and his rate for work performed in 2023 is $750. *See* DiLorenzo Decl. at Ex. C. Both rates are reasonable. McDermott Decl. at ¶¶ 22-24. Mr. McDermott found that "Mr. Stuckey's rates at all time have been below the 95th percentile and above the median and mean for a lawyer of similar experience" according to the OSB Survey. *Id.* at ¶24. Mr. Stuckey has been practicing law for 25 years. Stuckey Decl. at ¶ 2. According to Mr. McDermott, these rates reasonable "for attorneys of his comparable skills, ability, and reputation in the Portland legal community." McDermott Decl. at ¶ 24.

Mr. DiLorenzo is effusive in his praise for Mr. Stuckey and his skills, noting that he "has worked closely with me since [Mr. Stuckey] began his practice and has been a valued member of my impact litigation team since it was formed." DiLorenzo Decl. at ¶ 12. Moreover, Mr. Stuckey is Mr. DiLorenzo's "right-hand person" and "is an incredibly skilled and talented lawyer, and has been [Mr. DiLorenzo's] sounding board (and occasional critic providing invaluable gut checks) for over twenty years." *Id.* at ¶ 13. Mr. Stuckey "was critical to the Plaintiffs' securing such an exceptional result." *Id.*

A detailed description of Mr. Stuckey's accomplishments and qualifications can be found in the Stuckey Decl., in the McDermott Decl. at ¶¶ 22-24, and in the DiLorenzo Decl. at ¶¶ 12-13, and are incorporated by reference.

### c.     Christopher Swift

Mr. Swift's rate for work performed in 2022 is $515, and his rate for work performed in 2023 is of $650. *See* DiLorenzo Decl. at Ex. C. Mr. McDermott opines that Mr. Swift's rate for

Page 14 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

2022 is reasonable, noting that that rate "places him between the median and mean on one end, and the 95th percentile on the other end" of the OSB Survey. McDermott Decl. at ¶ 27. Mr. Swift has practiced law for roughly eight years. Swift Decl. at ¶ 2. Mr. McDermott notes that this rate is reasonable "[i]n light of Mr. Swift's skill, ability, and reputation[.]" McDermott Decl. at ¶ 27. Indeed, Mr. Swift is a graduate of Stanford Law School and "one of the brightest young talents in the Portland legal market[.]" DiLorenzo Decl. at ¶ 15. Mr. Swift is a long-time member of Mr. DiLorenzo's "impact litigation team," was an integral member of the team that secured "the largest jury verdict awarded in Oregon history" and has even successfully argued before the Oregon Supreme Court a case that "will continue to shape OPRL jurisprudence in years to come." *Id.* at ¶¶ 4, 14. In the context of this case, Mr. Swift's work "was critical to the Plaintiffs' securing such an exceptional result." *Id.* at ¶ 14. A detailed description of Mr. Swift's accomplishments and qualifications can be found in the Swift Decl., in the McDermott Decl. at ¶¶ 25-26 and in the DiLorenzo Decl. at ¶¶ 4, 14-15, and are incorporated by reference.

Mr. McDermott states that Mr. Swift's 2023 rate is not reasonable in the context of the Portland legal market. Accordingly, Plaintiffs request that work performed by Mr. Swift in 2023 be billed at his 2022 rate which Mr. McDermott opines is reasonable.

### d.    Seth Tangman

Mr. Tangman's rate for work performed in 2022 is $465, and his rate for work performed in 2023 is of $610. *See* DiLorenzo Decl. at Ex. C. Mr. McDermott opines that Mr. Tangman's rate for 2022 is reasonable, noting that that rate "places him between the median and mean on one end, and the 95th percentile on tother other end" of the OSB Survey. McDermott Decl. at ¶ 32. Mr. Tangman has practiced law for roughly eight years. Tangman Decl. at ¶ 8. Mr. McDermott notes that this rate is reasonable "[i]n light of Mr. Tangman's skill, ability, and reputation." McDermott Decl. at ¶ 29. Indeed, Mr. Tangman is a graduate of Michigan Law School, Tangman Decl., at ¶ 2, and "has a reputation in the community as an up-and-coming talent." McDermott Decl. at ¶ 29. Indeed, Mr. McDermott cited Mr. Tangman's training and

Page 15 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

"work experience in one of the most sophisticated venues in the country [the Delaware Court of Chancery] as indicative of exceptional skill." *Id*. at ¶ 30. Mr. DiLorenzo similarly explains that his decision to add Mr. Tangman to his impact litigation team was due in part to Mr. Tangman's training and that he finds Mr. Tangman to be "an experienced lawyer who turns out excellent work product—often deftly addressing potential counterarguments from our adversaries such that they are less effective when presented in response or answer." *Id.* at 17. Mr. DiLorenzo believes that "Mr. Tangman has already proved himself a valuable member of our impact litigation team" and that he believes Mr. Tangman "has an exceptionally bright future." *Id.* Mr. DiLorenzo noted that Mr. Tangman's work "set the stage for the exceptional result we were able to obtain for Plaintiffs." A detailed description of Mr. Tangman's accomplishments and qualifications can be found in the Tangman Decl., in the McDermott Decl. at ¶¶ 29-33 and in the DiLorenzo Decl. at ¶¶ 4, 16-17, and are incorporated by reference.

Mr. McDermott states that Mr. Tangman's 2023 rate is not reasonable in the context of the Portland legal market. Accordingly, Plaintiffs request that work performed by Mr. Tangman in 2023 be billed at his 2022 rate which Mr. McDermott opines is reasonable.

### D.  Plaintiffs seek reasonable costs.

In accordance with FRCP 54(d), Plaintiffs submit $652 in costs.  The costs consist of: (1) a $402 filing fee for the Complaint; (2) process server costs for subpoenas to the Joint Office of Homeless Services and to Multnomah County, incurred in this lawsuit. DiLorenzo Decl. ¶ 26. All of these fees were paid for by the law firm of Davis Wright Tremaine LLP. *Id.*

### E.  Plaintiffs also seek reasonable fees for fees, including expert fees and costs.

A prevailing party may seek its fees spent "preparing the fee motion and related briefing." *Davis v. Wal-Mart Stores, Inc.*, 2012 WL 1424105, at *4 (D. Or. Apr. 23, 2012). "In order to determine the 'proper amount of the fees-on-fees award' [courts] apply 'the same percentage of merit fees ultimately recovered.'" *Id.* (quoting *Schwarz v. Sec. of Health & Human Servs.,* 73 F.3d 895, 909 (9th Cir. 1995)). Plaintiffs spent $21,525.50 in preparing the fee petition

Page 16 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

4889-1900-6306v.10 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and associated work. DiLorenzo Decl., Ex. D. Plaintiffs anticipate they will spend at least $5,000 on reply and request that sum be included in its fees for fees—evidence of those expenditures will be provided on reply. Plaintiffs will provide evidentiary proof of spending at least that amount on reply. Accordingly, Plaintiffs request they receive $26,525.50, less the amount reduced by the same percentage applied to their fee award by the Court, if any.

Additionally, reasonable fees expended by an expert in connection with a fee petition are shiftable. *Chatelain*, 2017 WL 6663901, at *8. Mr. McDermott anticipates billing Plaintiffs between $13,000 and $14,000 for his services in analyzing the reasonableness of the fees sought, the assembly of this fee petition, and potential rebuttal opinion. McDermott Decl. at ¶ 8; *See Chatelain*, 2017 WL 6663901 at *8 (awarding attorney fee expert the lower estimate of fee quoted in original estimate, not actual fees incurred). Plaintiffs request that the Court award either the amount actually billed by Mr. McDermott, or the lower end of his quote in accordance with *Chatelain*. Evidence of Mr. McDermott's billings will be provided on reply. Accordingly, Plaintiffs approximately seek $13,000.00 for their expert fees.

## II. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and award Plaintiffs $676,556.50 in reasonable attorney fees; $652.00 in costs; $26,525.50 in fees for fees; and $13,000.00 in expert fees. Plaintiffs seek a grand total award of $716,734.00 from Defendant.

DATED this 4th day of August, 2023.

**DAVIS WRIGHT TREMAINE LLP**

By  s/ *Seth R. Tangman*
John DiLorenzo, Jr., OSB #802040
johndilorenzo@dwt.com
Aaron K. Stuckey, OSB # 954322
aaronstuckey@dwt.com
Christopher Swift, OSB #154291
chrisswift@dwt.com
Seth R. Tangman, OSB #211456
moetangman@dwt.com

Of Attorneys for Plaintiffs

Page 17 – PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS
4889-1900-6306v.10 0094650-000014
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax