**JOHN DiLORENZO, JR.,** OSB #802040
johndilorenzo@dwt.com
**AARON K. STUCKEY**, OSB #954322
aaronstuckey@dwt.com
**CHRISTOPHER SWIFT**, OSB #154291
chrisswift@dwt.com
**SETH R. TANGMAN**, OSB #211456
moetangman@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TIANA TOZER, PHILIP RHODES, BARBARA JACOBSEN, DANE SOUTHARD, LORIEN ILENA WELCHOFF, PAULINE LONG, MARK BARNHILL, STEVE JACKSON, KEITH MARTIN, and STEVEN REBISCHKE on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF PORTLAND,<br><br>    Defendant. | Case No. 3:22-cv-1336-MO<br><br>**SECOND DECLARATION OF JOHN DILORENZO IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS** |

I, John DiLorenzo, declare as follows:

1. I am a partner at Davis Wright Tremaine LLP ("DWT"). I am one of the attorneys representing the Plaintiffs in this matter. I am over the age of 18, competent to testify on the

Page 1 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

matters herein, and I make this Declaration based on my personal knowledge in support of Plaintiffs' Motion for Award of Attorney Fees and Costs.

2. My previous Declaration in support of Plaintiff's Motion for Award of Attorney Fees and Costs can be located at Dkt. 31, and is incorporated by reference into this second Declaration.

3. Attached as Exhibit E[1] to this Declaration is a document containing Counsel's rebuttal to positions noted in Exhibit 1 of the Declaration of Naomi Sheffield, Dkt. 39-1.

4. Attached as Exhibit F are billing records reflecting work performed and billed by Mr. Tangman and myself in connection with the contemporaneously filed Reply In Support of Plaintiffs' Motion for Award of Fees and Costs. That Exhibit reflects work performed in the amount of $8,006.00, but Plaintiffs have already stated in their moving papers that work performed on Reply will be capped at $5,000.00.

5. Attached as Exhibit G is an invoice reflecting work performed and billed by expert Witness James McDermott in connection with Plaintiffs' Motion for Award of Fees and Costs, in the amount of $12,510.

6. I provide this second declaration to provide context to the settlement negotiation process and the relief received under the settlement agreement. See *Hood River County School District v. Student*, 2022 WL 1153986, at *5 (D. Or. Apr. 19, 2022. (statements made in the context of settlement negotiations or during judicial mediations, while typically protected under FRE 408, and LR 16-4(g)(1), are admissible to assist the Court in resolving attorney fee petitions).

7. After Plaintiffs filed this lawsuit, the City indicated that it would be amenable to a collaborative settlement process. This made sense because, in my view, I was confident we could persuade the City Attorneys and City Council members that there were systemic blockages on

---

[1] Exhibits A through D are attached to Dkt. 31.

Page 2 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

city sidewalks that severely impacted the lives of Plaintiffs and others with mobility disabilities. I was emboldened in that belief when the City Attorney asked my team to bring directly to his attention specific instances of sidewalk blockages that impacted the individual Plaintiffs. Indeed, a significant amount of communications concerned exactly that. Moreover, it became apparent that our case was a political headache for the City, and they faced pressures from various sources. I was also in communication with the United States Attorney's Office, who had indicated that they were considering filing a statement of interest of the United States on behalf of my clients and against the City.

8. After settlement overtures, my firm negotiated with the City team which was initially led by Sam Adams, who was the Mayor's Director of Strategic Innovations. Those negotiations began in October of 2022 and occurred in person and on a regular basis until the settlement was agreed to and ultimately approved by the City Council on May 31, 2023. During every single settlement negotiation or mediation session, my team was always out-numbered by lawyers from the City Attorney's office. Indeed, apart from the first negotiation session, my settlement legal team consisted only of Aaron Stuckey and me. Eric Fruits and other clients attended several of the final series of meetings.

9. At the outset of negotiations the City was concerned that Plaintiffs chose to sue only them and not the County or other governmental entities. *See* Exhibit H. We repeatedly explained that the City maintains sole control over the City-owned pedestrian rights-of-way that were obstructed and that Plaintiffs had no claim against the County or other entities under the Americans with Disabilities Act. The City requested that my team investigate a way to implead or otherwise sue the County. My team ultimately issued subpoenas to Multnomah County and the Joint Office of Homeless Services with consent from the City, as previously described in the filings in connection with this Motion.

10. The County's response to the subpoenas revealed that it had used taxpayer funds

Page 3 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

to provide over 20,000 tents and 60,000 tarps, through its non-profit partners to, in turn, distribute them into the homeless community, most of which were placed on City sidewalks.

11. On December 1, 2022, the City's initial settlement draft proposed the City would remove a certain percentage of encampments at certain intervals, eventually removing all encampments by a date certain, but only so as to guarantee a 36-inch clearance for sidewalk access. See Exhibit I. In response, I directed my team to research ADA compliance issues in an attempt to move the City off of its 36-inch position. Counsel provided a revised counteroffer on December 7, 2022 which incorporated that research. See Exhibit J.

12. Following discovery and research, my team identified a potential basis for the City to seek recourse against the County and implead it or otherwise seek indemnification pursuant to an intergovernmental agreement between the two entities, as it was the County that placed the many of the very obstructions on the sidewalks that prompted the lawsuit against the City. Although the City declined to sue the County, Sam Adams made clear his intention to utilize the information.

13. As negotiations progressed, there were two key points advanced by the City in an effort encourage a settlement and to keep their funding obligations down. First, the City contended that the Measure 26-228 charter amendments—which expanded of the number of seats on the City Council, lessened mayoral power, and changed the way votes are counted—meant Plaintiffs would face uncertainty and a potentially hostile future City Council if they failed to settle before the next Council elections. Specifically, if the City Council were to become packed with members who were opposed to removal of tents, tarps and, encampments from sidewalks, any settlement would have to be on less advantageous terms or the case would likely have to go to trial—which would likely last for weeks and exorbitantly drive up costs on both sides.

Page 4 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

14. Second, the City argued during negotiations that any agreed-upon future Impact Reduction funding levels under the settlement could not be inline with then-current and prior funding levels because those numbers were not indicative of what the City could realistically agree to spend in the future. To that end, the City supplied Plaintiffs with a "Budget Development" document prepared by the City Budget Office's Office of Management & Finance, a copy of which is attached as Exhibit K (the "Proposed Budget"), for support of its insistence that it could not agree to guarantee funding of the Impact Reduction Program in an amount higher than $2.5 million annually.

15. Specifically, the City utilized the Proposed Budget to show why it could not agree to the larger sums of money requested by Plaintiffs. The Proposed Budget highlighted that prior funding contained sums from ODOT that were earmarked for activities on ODOT rights-of-way, (and not on City sidewalks), as well as one-time state and local funding expenditures that would not be recurring. This is highlighted on page 15 of Exhibit K, which also included a proposed budget for the Impact Reduction Program for fiscal year 2023-24 of roughly $7.7 million containing over $2 million of excluded ODOT funds—several million less than what was ultimately agreed to in the settlement. Our team was also led to believe that the Impact Reduction Program budget also contained federal funds tied to the Covid-19 federal programs that would not be renewing, thereby further reducing the amount it said it could contribute without County support.

16. Additionally, Plaintiffs initially sought a requirement that the City maintain clear rights-of-way at least ten feet wide. As noted above, the City countered that, in its view, the ADA only requires the City to maintain rights-of-way 36-inches wide, and the City adhered to that alleged minimal requirement at the outset of the negotiation. In order to change their views, we conducted additional research into ADA requirements, and City policies, and also consulted with safety consultant (and form Portland Fire Bureau official) Don Porth on why it should be in

Page 5 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

the City's interest to maintain a larger clearance for pedestrian rights of way. We also suggested that the City should adhere to rules established by its Bureau of Transportation with respect to "Pedestrian Through Ways."

17. On January 5, 2023, the City requested Sam Adams' resignation and other City staff began inserting themselves into the negotiations. On January 17, 2023, the City sent its counteroffer, highlighting "pretty significant changes." Notably the changes included entirely scrapping the initial removal framework. The City's flip-flop marked a restart on significant issues after nearly a month's work of research, outside communications with experts, communications with the City, and drafting the proposed settlement once Sam Adams was no longer leading the City team.

18. The City also changed their position with respect to the clearance requirements for pedestrian rights-of-way, adopting a our suggestion that it would maintain clear rights-of-way as that term is defined by PBOT. According to PBOT standards, the pedestrian right-of-way for newly constructed sidewalks is 6-to-8 feet.

19. Around this time—December and January, the City insisted that it hoped to settle for a sum certain to pay for Counsel's attorney fees. The City and Counsel spent significant time negotiating that figure, reviewing Counsel's billing records and legal theories. However, on April 7, 2023, the City again reversed course on its own stated position, stating it could now only settle by having the Court decide the fee award—thereby wasting several months of resources, attorney time, and tens of thousands of dollars of fees. When I inquired about the change of heart, I was led to believe that the City leadership did not want to be seen "volunteering" fees to my firm.  Attached as Exhibit L is an email communication with the City expressing the sentiments in this Paragraph.

20. As settlement drew closer, I was also contacted by personnel at TriMet concerning the case. TriMet had been closely following the case, as its employees had been

Page 6 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

experiencing similar safety concerns as my clients involving the tent encampments (as well as their fear of accidentally colliding with a person living in the encampments) and were curious how they could help. I incorporated language in the settlement agreement that included access to mass transit stops.

21.     Ultimately, my team was able to exact significant concessions from the City. On funding, we agreed to a first year funding obligation of $8 million, with $3 million per year for the following four years—totaling $20 million which amounted to a $7.5 million increase from the City's previously entrenched position. I am aware of no other mandatory funding obligation the City had with respect to the Impact Reduction Program, apart from its intergovernmental agreement with ODOT requiring the City to use ODOT funds to maintain clear ODOT rights-of-way—a category of funding and work not relevant to the settlement. The $20 million funding obligation provided for in this settlement is binding on future City Councils—hostile or not, and it is recession proof. The guaranteed funding is particularly important as I am aware now that the City might well restructure portions of its budget to make way for the forthcoming Council reforms.

22.     My team was also able to increase the clearance width of pedestrian rights-of-way from 36-inches (on most sidewalks) to 6-to-8 feet which effectively requires the City to attend to and address every reported tent encampment on City sidewalks.

23.     Since we secured a victory for the Plaintiffs, many of the Plaintiffs have expressed gratitude to my firm, in particular because other governmental agencies and disability rights advocacy groups refused to tackle this project. According to the Plaintiffs, only CATR and my office answered their calls. Indeed, I am aware that at least one such advocacy group has criticized the suit and the settlement wishing instead to prioritize the interests of those blocking the sidewalks.

24.     Moreover, this case certainly would have been more expensive to manage had

Page 7 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Tiffany Hammer not been involved. Ms. Hammer is a community organizer and activist who first alerted me to the issue, as described in my first declaration. Ms. Hammer was involved in the suit every step of the way, assisted in assembling the Plaintiff group, and acted as a key liaison with the Plaintiffs. Indeed, it was most efficient (and therefore reduced fees) to communicate with the Plaintiffs through Ms. Hammer, who was a trusted ally for them.

25. Similarly, our client CATR, the partial litigation funder of this lawsuit and non-profit watchdog was instrumental in bringing about the settlement. Moreover, Dr. Eric Fruits, my key contact with CATR for this case, is intimately aware of the issues underlying this suit and was prepared to act as a consulting expert should the case advance that far. Dr. Fruits was a key resource in this lawsuit and participant in our settlement negotiations. We have not separately charged for his time but believe we should be compensated for our interactions with him.

26. Cognizant of legal authorities concerning awarding of attorney fees in federal court, I directed my staff and Seth Tangman to review the bills and voluntarily reduce any time that they viewed as not shiftable under controlling law. The fees submitted in this fee petition are accordingly already reduced by 24.6%, including writing off all time for legal staff and paralegals, and time spent on administrative and clerical tasks.

27. While I disagree with the City's contention that the billing entries contain vague descriptions, I directed my staff to go back through the 571 entries provided to the Court at Dkt 31, Ex. C, and identify any entries referencing non-clients that—in the totality of their context—could possibly be construed as vague. Lawyer-Plaintiff communications were obviously about the case, and we take care to avoid breaching our client's lawyer-client privilege in billing entries. Accordingly, time entries referencing clients have not been identified as potentially vague. I directed my staff to then highlight potentially vague entries yellow and create a new exhibit indicating the potentially vague entries, a copy of which is attached as Exhibit M. That

Page 8 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

resulted in .9 hours from Seth Tangman in 2022; 12.9 hours from John DiLorenzo in 2022; and 7.7 hours from John DiLorenzo in 2023, being identified as potentially vague.

28. Should the Court deduct the potentially vague entries described in Paragraph 27, Plaintiffs' sought award would be reduced by $18,801.50 for a fee award of $657,755.00, (not inclusive of costs, expert fees, and fees-for-fees).

29. Given that the 2022 OSB Economic Survey departed from past practice and does not now track 75th Percentile hourly rates, I directed my staff to calculate what those rates would be assuming a normal distribution and adjusted for inflation. Accordingly, to calculate the 75th Percentile hourly rate for each timekeeper, my staff used $0 and the corresponding reported 95th Percentile as the end points of a normal distribution curve, with the median hourly rate serving as the median, or 50th Percentile. Given the imperfect data, this approach is conservative and actually results in a 75th Percentile that is likely lower than what the 75th Percentile would be actually assuming a normal distribution with additional data points. I then directed my staff to adjust upward the rates to account for inflation using the U.S. Bureau of Labor Statistics CPI Inflation Calculator using data for January of the beginning of each corresponding year. This process resulted in the table below which approximates the 75thp Percentile rates:

| Timekeeper | 75th Percentile Calculated | 75th Percentile Adjusted for 2022 Inflation | 75th Percentile Adjusted for 2023 Inflation |
|---|---|---|---|
| John DiLorenzo | $611.50 | $657.24 | $699.37 |
| Aaron Stuckey | $573.50 | $616.40 | $655.91 |
| Chris Swift | $418.00 | $449.27 | $478.06 |
| Seth Tangman | $401.50 | $431.53 | $459.19 |

30. Should the Court award the 75th Percentile hourly rates as calculated above in Paragraph 29, Plaintiffs' sought award would be reduced by $132,753.62 for a fee award of $543,802.88, (not inclusive of costs, expert fees, and fees-for-fees).

Page 9 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

31.     Should the Court deduct the potentially vague time entries described above in Paragraph 27 *and* award the 75th Percentile hourly rates as calculated above in Paragraph 29, Plaintiffs' sought award would be reduced by $146,864.97 for a fee award of $529,691.53 (not inclusive of costs, expert fees, and fees-for-fees).

*I declare that the above statements are true to the best of my knowledge and belief, and that I understand they are made for use as evidence in court and is subject to penalty for perjury.*

DATED: September 18, 2023.

s/ *John DiLorenzo, Jr.*
John DiLorenzo, Jr.

Page 10 – SECOND DECLARATION OF JOHN DILORENZO

4870-7197-2223v.7 0094650-000014

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax