IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIANA TOZER, PHILIP RHODES, BARBARA JACOBSEN, DANE SOUTHARD, LORIEN ILENA WELCHOFF, PAULINE LONG, MARK BARNHILL, STEVE JACKSON, and STEVEN REBISHKE, | Case No.: 3:22-cv-01336-AN |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CITY OF PORTLAND, | |
| Defendant. | |

Plaintiffs Tiana Tozer, Philip Rhodes, Barbara Jacobsen, Dane Southard, Lorien Ilena Welchoff, Pauline Long, Mark Barnhill, Steve Jackson, and Steven Rebishke (collectively, "plaintiffs") filed this Motion for Award of Attorney Fees and Costs, ECF [30]. Defendant City of Portland ("the City") filed a response in opposition, ECF [38], and plaintiffs replied, ECF [40]. On November 15, 2023, with this Court's permission, the City filed a sur-response, ECF [46], and plaintiffs filed a sur-sur-reply, ECF [48]. For the reasons outlined below, plaintiff's Motion for Award of Attorney Fees and Costs is PARTIALLY GRANTED. Accordingly, plaintiffs are AWARDED $609,151.15 in total fees and costs.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. Proc. 54(d)(1). Claims for attorney's fees "must be made by motion." *Id.* 54(d)(2). A motion for attorney's fees must specify the "statute, rule, or other grounds entitling the movant to the award" and "state the amount sought or provide a fair estimate of it." *Id.* The Americans with Disabilities Act of 1990 provides that courts may allow a prevailing party other than the United States "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. § 794a of the Rehabilitation Act of 1973 provides that courts may allow a prevailing party other than the United States "a reasonable attorney's fee

1

as part of the costs." 29 U.S.C. § 794a(b).

## BACKGROUND

This case was filed on September 6, 2022. Plaintiffs asserted claims for injunctive relief against the City arising out of the City's failure to maintain its sidewalks and pedestrian rights of way clear of tent encampments and debris under § 12205 of the Americans with Disabilities Act of 1990 ("the ADA") and § 794a(b) of the Rehabilitation Act of 1973. Pls.' Mot., ECF [30], at 2. Plaintiffs and the City reached a settlement requiring the City to devote resources to comply with the ADA and the Rehabilitation Act by maintaining sidewalks and pedestrian rights of way clear of obstruction. *Id.* In the Settlement Agreement, ECF [26], the parties agreed that the Court should determine attorney fees.

In plaintiffs' Motion for Award of Attorney Fees and Costs, Davis Wright Tremaine ("DWT") asks this Court to award $676,566.50 in attorney fees, $652.00 in costs, $26,525.50 in fees-for-fees, and $13,000.00 in expert fees, for a grand total of $716,734.00. Pls.' Mot. 2. DWT offers an across-the-board reduction in attorney fees of roughly 24.6% to reflect adjustments for fees that should not be shifted to the City and offers to use lower billing rates for two of its attorneys. *Id.* at 6, 15–16. The City argues that DWT seeks fees for a significant amount of unnecessary work and that it is seeking fees at unreasonably high billing rates. Def.'s Resp., ECF [38], at 1. The City proposes deductions to DWT's hours and would use Oregon State Bar median billing rates, asking that this Court award no more than $222,455.00 in total for plaintiffs' fees and costs. *Id.* at 10.

## DISCUSSION

### A.    Reasonableness of the Amount Billed

Prevailing plaintiffs are entitled to reasonable attorney fees under the ADA and the Rehabilitation Act. 42 U.S.C. § 12205; 29 U.S.C. § 794a(b). The City broadly argues that DWT's fees are unreasonable and excessive because $676,566.50 in legal fees is 1300% greater than the $50,000 in total damages that plaintiffs obtained. Def.'s Resp. 1. The City argues that this was a simple case which reached a settlement after only seven months and which involved ten informal meetings, three judicial settlement

2

conferences, and no motions practice. *Id.*

The results achieved by the settlement are significant. Plaintiffs secured a new $20 million guaranteed funding obligation for sidewalk cleanups. Pls.' Reply, ECF [40] at 1. Plaintiffs also secured City-wide injunctive relief requiring the City to prioritize removing obstructions resulting in less than six to eight feet of pedestrian right-of-way access. *Id.* It would have been unreasonable for DWT to assume that this case would settle and do less research on the front end. DWT correctly points out that its initial investments researching and investigating sidewalk obstructions in Portland likely persuaded the City to negotiate a settlement. *See id.* at 4. The Court finds that DWT's team achieved a significant result in this litigation which merits an award for their fees and costs.

**B.    Attorney Fees**

The lodestar method, which multiplies the number of hours reasonably expended on the litigation by the reasonable hourly rate, is the appropriate metric for determining reasonable attorney fees. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). After multiplying the two, the "presumptively reasonable" lodestar figure may be adjusted based upon the factors outlined in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). Here, the City argues that DWT's requested billing rates are unreasonably high and that DWT includes vague, excessive, or unrecoverable time that should be deducted. Def.'s Resp. 3–8. DWT disagrees, emphasizing its team's expertise in impact litigation and arguing that the City takes DWT's time entries out of context. Pls.' Reply 6–9.

1.    *Reasonable Billing Rates*

The "prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262–63 (9th Cir. 1987). A "fee applicant has the burden of producing satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Id.* If a requested rate exceeds the average rate in the Oregon State Bar Economic Survey ("OSB Economic Survey"), "the burden is on the prevailing party to justify that higher rate." *Chatelain v. Country Mut. Ins.*

*Co.*, No. 3:15-cv-02013-MO, 2017 WL 6663901, at *6 (D. Or. Dec. 29, 2017). However, courts may award higher rates where the attorney had "significant experience" litigating similar cases. *See id.*

The 2022 OSB Economic Survey no longer includes the 75th percentile of billing rates. Instead, it provides the mean, median, and 95th percentile. DWT provides a discussion and calculation of what the 75th percentile likely looks like in Mr. DiLorenzo's second declaration. DWT staff assumed a normal distribution and used $0 and the 95th percentile for the end points of the normal distribution curve. 2d Decl. of John DiLorenzo ("2d Lorenzo Decl."), ECF [44], at ¶ 29. The City does not object to DWT's calculation. Def.'s Sur-Resp., ECF [46], at 2.

DWT seeks an award of attorney fees for four attorneys. The City asks that the Court adjust DWT's rates to match the median rates in the 2022 OSB Economic Survey. *Id.* at 2–3. The billing rate for each DWT attorney is addressed in turn.

a.      John DiLorenzo

Mr. DiLorenzo is a partner at DWT and has been practicing law for forty-three years. Decl. of John DiLorenzo ("DiLorenzo Decl."), ECF [31], at ¶¶ 1–2, Ex. A. Mr. DiLorenzo has experience litigating public impact cases, such as *County of Linn v. State of Oregon*, No. 16CV07708 (Linn. Co. Cir. Ct. 2016), *Anderson v. City of Portland*, No. 1112-15957 (Mult. Co. Cir. Ct. 2011), *Masonry Building Owners of Oregon v. Ted Wheeler*, 394 F. Supp. 3d 1279 (D. Or. 2019), and more. *Id.* ¶ 4. The City argues that Mr. DiLorenzo and his team do not have direct legal experience with the ADA or Section 504 claims. Def.'s Resp. 3. Mr. DiLorenzo was the lead lawyer on this case. DiLorenzo Decl. ¶ 9.

DWT's requested rates for Mr. DiLorenzo are $855 for 2022 and $955 for 2023. According to the 2023 OSB Economic Survey, the median rate for private practitioners in Downtown Portland admitted to practice for over thirty years is $425, and the 95th percentile is $798. The Court finds that Mr. DiLorenzo's experience with public impact litigation justifies his rate. The City has not shown that the rates are unreasonable for an experienced attorney like Mr. DiLorenzo who is well known for his work in impact litigation.

4

b.      Aaron Stuckey

Mr. Stuckey has been practicing law for twenty-eight years.  Decl. of Aaron Stuckey, ECF [32], at ¶ 2.  Mr. Stuckey has worked with Mr. DiLorenzo on public impact cases such as *Vannatta v. Keisling*, 324 Or. 514, 931 P.2d 770 (1997), *County of Linn*, C.A. No. 16CV07708, and *Anderson*, C.A. No. 1112-15957. *Id.* ¶ 3.  Mr. Stuckey is currently of counsel at DWT, and he served as senior counsel on this case. *Id.* ¶ 4.  He reviewed Mr. Swift and Mr. Tangman's work product and participated in settlement negotiations. *Id.*  Mr. Stuckey was a primary communicator during the settlement negotiations with the City.  Decl. of James T. McDermott ("McDermott Decl."), ECF [35], at ¶ 23.

DWT's requested rates for Mr. Stuckey are $670 for 2022 and $750 for 2023. Pls.' Mot. 4. Mr. Stuckey's rate for 2022 falls between the OSB median rate of $450 and the 95th percentile of $697 for attorneys in Downtown Portland with twenty-one to thirty years of experience.  Mr. Stuckey's 2023 rate falls below the 95th percentile only after adjusting for inflation.  McDermott Decl. ¶ 24.  The Court finds that these rates are reasonable considering Mr. Stuckey's depth of experience in impact litigation.

c.      Christopher Swift

Mr. Swift has been practicing law for about eight years. Decl. of Chris Swift, ECF [33], at ¶ 2.  His practice focuses on complex commercial and government-related litigation, and he has worked on Mr. DiLorenzo's impact litigation team since 2015. *Id.* ¶ 3.  Mr. Swift was staffed as a senior associate on this case and was primarily responsible for analyzing case law and forming a litigation strategy. *Id.* ¶ 5.

Mr. Swift's actual hourly rates were $515 for 2022 and $650 in 2023, but DWT requests his 2022 rate for both years because DWT's expert, Mr. McDermott, opines that a billing rate of $650 is not reasonable. *Id.* ¶ 6; McDermott Decl. ¶ 28.  Mr. Swift's 2022 billing rate of $515 falls below the 95th percentile of billing rates only after adjusting for inflation.  The Court finds that the $515 rate is unreasonably high in light of Mr. Swift's experience.  Therefore, Mr. Swift's rate is reduced to DWT's estimated 75th percentile of $418 per hour.

       d.      Seth Tangman

Mr. Tangman has been practicing law for about six years. Decl. of Seth Tangman, ECF [34], at ¶ 8. He has experience practicing corporate litigation before the Delaware Court of Chancery and now focuses on complex commercial litigation, including class action litigation. *Id.* ¶¶ 4, 9. He has worked on Mr. DiLorenzo's impact litigation team since 2021. *Id.* ¶ 10. Mr. Tangman was staffed as a senior associate on this case and worked on drafting the Complaint, coordinating named plaintiffs, and compiling the fee petition. *Id.* ¶¶ 12–13.

Mr. Tangman's actual hourly rates were $465 for 2022 and $610 for 2023, but DWT is requesting the 2022 rate for both years. *Id.* ¶ 16; McDermott Decl. ¶ 33. Mr. Tangman's 2022 billing rate of $465 falls between the median and 95th percentile for Portland attorneys with four to six years of experience. McDermott Decl. ¶ 32. However, $465 is still an unreasonable rate because Mr. Tangman does not have experience in disability law, and he has limited experience in impact litigation. Therefore, Mr. Tangman's rate is reduced to the applicable OSB median rate, which is $308 per hour.

In summary, the Court ADOPTS DWT's requested rates for Mr. DiLorenzo and Mr. Stuckey, REDUCES Mr. Swift's rate from $515 to $418, and REDUCES Mr. Tangman's rate from $465 to $308.

      2.    *Billing Entries*

The City argues that DWT's fees should be reduced to eliminate vague and duplicative time entries and minimum billed time, and that DWT should not recover time spent promoting the case and communicating with non-plaintiffs. Def.'s Resp. 3-8. These arguments are addressed in turn.

       a.      Vague Time Entries

The party requesting attorney fees "must submit evidence documenting the hours claimed, and if the documentation is inadequate, or the claimed hours appears 'excessive, redundant, or otherwise unnecessary,' the court should reduce the award accordingly." *Wolfe v. City of Portland*, No. 3:12-cv-02035-PK, 2013 WL 6002391, at *4 (D. Or. Nov. 8, 2013) (quoting *Webb v. Bd. Of Educ. Of Dyer Cnty.*, 471 U.S. 234, 253 n.16 (1985)). An attorney need not "record in great detail how each minute of his time

was expended," but an attorney "should identify 'the general subject matter of his [or her] time expenditures.'" *Id.* (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)). In its Message from the Court Regarding Fee Petitions, the District warns against vague billing items such as "conference," "telephone call with . . .," or "correspondence to . . ." with no description of the subject of the communication because such entries make it "nearly impossible to assess the reasonableness of the requested time." *Message from the Court Regarding Fee Petitions*, U.S. DIST. CT., DIST. OF OR., https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated March 2, 2017).

The City argues that DWT's requested fees include 977 time entries with vague descriptions. Def.'s Resp. 4. DWT went back through its time entries and highlighted entries which it concedes are vague. 2d DiLorenzo Decl. ¶¶ 27–28, Ex. M. Mr. DiLorenzo explains that this resulted in 0.9 hours from Mr. Tangman in 2022, 12.9 hours from Mr. DiLorenzo in 2022, and 7.7 hours from Mr. DiLorenzo in 2023. *Id.* DWT did not offer to deduct any potentially vague entries which include lawyer-plaintiff communication because they are "obviously about the case" and to protect lawyer-client privilege. *Id.*

DWT also responds that some entries are not vague when viewed in context. Pls.' Reply 1. One of Mr. DiLorenzo's time entries, which is dated August 19, 2022, includes three entries: "Conference with S. Tangman (.2); review and analyze correspondence from S. Tangman and A. Stuckey (.3); review redline comparison of complaint (.2)." DiLorenzo Decl., Ex. C. The City breaks these apart and identifies the first two entries as vague. Decl. of Naomi Sheffield ("Sheffield Decl."), ECF [39], Ex. 8. DWT would likely argue that the third entry from the same day covers the subject matter of the first two, such that the conference and correspondence were both about redline edits to the complaint. Pls.' Reply 7–8.

The Court finds that most time entries identified by the City as vague have the exact problem that the District cautioned against—they state correspondence or communication without identifying the subject matter. *See* Sheffield Decl., Ex. 8. The Court cannot broadly assume that the subject matter of any one time entry is the same as another entered on the same day. On the other hand, DWT's

attorneys clearly separate some entries by subject matter. For example, it is reasonable to assume that the communications that Mr. DiLorenzo billed on May 11, 2022 all related to the "Usher v. Portland pleadings" and that Mr. DiLorenzo's conference with Mr. Tangman on May 26, 2022 related to plaintiff engagement agreements. *See* DiLorenzo Decl., Ex. C, at 3, 4. It would be overly strict to exclude 100% of vague time that accompanies a more detailed entry on the same day. Therefore, the Court reduces the entries which do not indicate subject matter by only 50%. This reduction is applicable to the following time:

- 122.6 hours billed by Mr. DiLorenzo in 2022

- 3 hours billed by Mr. Stuckey in 2022

- 1 hour billed by Mr. Swift in 2022

- 1.2 hours billed by Mr. Tangman in 2022

- 72.2 hours billed by Mr. DiLorenzo in 2023

- 0.5 hours billed by Mr. Stuckey in 2023

This amounts to a total reduction of $88,473.30.

        b.      Duplicative Time Entries

The City argues that DWT includes some time entries by multiple attorneys for the same meeting. Def.'s Resp. 5. When attorneys hold a conference, "good 'billing judgment' mandates that only one attorney should bill that conference to the client." *Muller v. Country Mut. Ins. Co.*, No. 3:14-cv-01345-MO, 2017 WL 6209701, at *5 (D. Or. Dec. 8, 2017) (quoting *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1252 (D. Or. 2013)). In *Muller*, the court deducted hours for "double-billed" meetings. *Id.*

Here, the City identifies meetings and conferences attended by as many as four attorneys and asks this Court to reduce this billing to "no more than two attorneys." Def.'s Resp. 5. DWT responds that attendance by a litigation team at a settlement conference is not duplicative or unreasonable and points out that its team was "always out-numbered" by the City's attorneys. Pls.' Reply 8–9. The Court finds that some time entries identified by the City relate to internal meetings and some relate to settlement

negotiations.  Sheffield Decl., Ex. 9.  It is not duplicative for multiple attorneys to attend settlement negotiations, but to the extent any meetings were purely internal, DWT attorneys should not triple-bill. Duplicative time for internal meetings amounts to 1.5 hours of Mr. Tangman's time and 0.7 hours of Mr. Swift's time.  Using the billing rates adopted above, $754.60 is deducted for duplicative time.

      c.      Minimum Billed Time

      The City flags that DWT has billed 0.1 hours for tasks that should take under a minute and that DWT appears to use 0.2 minimum billing for many other entries that describe simple or clerical tasks. Def.'s Resp. 8.  The City requests that this Court exclude 5.6 hours of time "where the description is insufficient to support the 0.1 billing," and that all 0.2 entries billed be reduced by 75%. *Id.*  In *Updike v. Multnomah County*, the court noted that there is "some concern" among some judges "that an activity that may have taken only a few seconds is billed at a minimum of 0.1 hour."  No. 3:13-CV-1619-SI, 2020 WL 4736461, at *3 (D. Or. Aug. 14, 2020).  In *Updike*, the court addressed the problem of minimum billing and blocked time together "with a general ten percent 'haircut.'"  *Id.*

      DWT does not directly address the City's argument about minimum billed time but insists that its billing practices are reasonable.  *See* Pls.' Reply 7–9.  DWT's expert opines that the "level of detail" in DWT's bills is "typical of commercial billing practices" and that similar bills are "frequently paid by commercial clients." 2d Decl. of James McDermott, ECF [41], at ¶ 4.  Mr. DiLorenzo also asks this Court to recognize that his team already wrote off all time for legal staff and paralegals, and time spent on administrative and clerical tasks. 2d DiLorenzo Decl. ¶ 26.

      Upon review of the entries that the City complains of here, the Court finds that the City has already flagged a majority of the entries as vague.  *See* Sheffield Decl., Exs. 14, 15.  Entries already identified as vague do not require further reduction.  The City's expert, Ms. Sheffield, flags a couple categories of tasks that perhaps should not have taken as much time as DWT counsel billed.  *Id.* ¶ 19.  These are ECF communications, communications with courtroom clerks, and communications with the City.  *Id.* The Court is not concerned by the 0.1 time entries for such tasks because the limited number of them do

not indicate unreasonable billing practices.[1]  While Ms. Sheffield offers compelling examples of tasks that should not take as long as twelve minutes, most time entries related to such examples have already been flagged as vague.  *Id.* Ex. 15.  Additionally, some entries are not as unreasonable as the City would depict them—for example, a lead attorney could reasonably spend 0.2 hours reviewing a final joint status report "as filed."  *Id.* Ex. 15, at 18.  Therefore, no further reduction for minimum billing will be deducted.

        d.      Time Spent Promoting the Case

        Contact with the media is work "that attorneys generally do at their own expense." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995).  An exception to this rule recognizes that contact with the media is compensable when it is "directly and intimately related to the successful representation of a client." *Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1087 (N.D. Cal. 2022) (internal quotation marks omitted); *see Paeste v. Gov't of Guam*, 624 Fed. App'x 488, 491 (9th Cir. 2015); *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999).

        The City argues that no exception applies here because Oregon courts consistently follow *Gates v. Gomez*.  However, Ninth Circuit cases published after *Gates v. Gomez* recognize the potential compensability of time spent in contact with the media. *See Paeste*, 624 Fed. App'x at 491; *Gilbrook*, 177 F.3d at 877.  The issue, then, is whether DWT has adequately shown that its contact with the media was "directly and intimately related to the successful representation of a client." *Wit*, 578 F. Supp. 3d at 1087(internal quotation marks omitted).  In *Wit*, the court shifted fees for time spent:

> "to locate additional class members . . . ; time spent on press releases and interviews of Class Counsel that communicated key developments in the case to the public and the class; meetings and communications related to those interviews and press releases; time spent drafting an internal memorandum 'outlining any legal ethics issues that could constrain the statements counsel could make while trial was ongoing;' time spent advising class members regarding their own contact with the media; and time spent responding to inquiries from class members, the media and behavioral health advocates regarding the Court's decision following the bench trial."

*Id.* at 1087–88.

---

[1] The City flagged 5.6 hours of time for improper 0.1 hour billing, and 3.5 hours of this time is already flagged as vague. *See* Sheffield Decl., Ex. 14.

In *Gilbrook*, the court held that a district court did not abuse its discretion by granting fees for media contact "insofar as those activities contributed directly and substantially to plaintiffs' attainment of favorable jury verdicts," but not for time spent publicizing the result post-verdict. 177 F.3d at 877; *but see Bonnichsen v. United States*, No. Civ. 96-1481-JE, 2004 WL 2901204, at *9 (D. Or. Dec. 15, 2004) (declining to award fees for media contact where "public opinion was irrelevant to the ultimate decision").

DWT argues that contact with the media was used to advance its litigation goals because the case involved "a hot-button social issue" and any settlement required the City Council's approval. Pls.' Mot. 11. DWT argues that its media relations were "necessary and 'accretive' to encourage the City to recognize the federal rights of its citizens." *Id.*; McDermott Decl. ¶¶ 43, 51, 55, 60. The City responds that DWT did not represent a certified class, nor does it have unique circumstances requiring media contact because litigation with the City frequently involves "hot-button" issues and all settlements of $5,000 or more require the City Council's approval. Def.'s Resp. 6. Further, the City argues that plaintiffs could have testified before the City Council, so using the media to pressure the Council was unnecessary. *Id.*

The Court finds that media contact was an effective tool in DWT's litigation strategy and settlement negotiations with the City. However, DWT's documentation of media contact lacks detail. The Court cannot assume that every correspondence with the media advanced plaintiffs' litigation goals without knowing the subject matter of the correspondences. *See* Sheffield Decl., Ex. 10. Therefore, the entries for media contact are reduced by 50% across the board. However, not all entries flagged by the City are reduced because the Court finds that some were valid legal, research, or lobbying activities. *See* Sheffield Decl., Ex. 10. This reduction is applied to the following time:

- 38 hours billed by Mr. DiLorenzo in 2022
- 2.3 hours billed by Mr. Tangman in 2022
- 16.5 hours billed by Mr. DiLorenzo in 2023

This amounts to a total reduction of $24,392.45.

e.      Time Spent Communicating with Non-Plaintiffs

The City argues that DWT spent over 100 hours communicating with non-plaintiffs.

Specifically, the City complains about time spent communicating with Tiffany Hammer, Eric Fruits, TriMet, the U.S. Attorney's Office, the Multnomah County District Attorney's Office, various business interest groups, and a former Portland Fire Bureau official. Def.'s Resp. 6–7. DWT criticizes the City's view as "restrictive." Pls.' Reply 9. DWT must show that its claimed time was "reasonably necessary" to the litigation and should make "a good faith effort" to exclude hours that are excessive or unnecessary. *Hensley*, 461 U.S. at 434. DWT's contact with each party is addressed in turn.

**Tiffany Hammer.** Tiffany Hammer is a community organizer and activist who first brought the issues in this case to Mr. DiLorenzo's attention and helped identify people with disabilities who were willing to participate in the litigation. DiLorenzo Decl. 5–7. Mr. DiLorenzo credits Ms. Hammer with augmenting the group, helping the individual plaintiffs prepare their declarations, and coordinating meetings with the plaintiffs. *Id.*; Pls.' Reply 9 (asserting that "communications with Ms. Hammer . . . actually reduced fees"). Given this information, the City's argument that time for communications with Ms. Hammer should not be awarded is unpersuasive, except to the extent any entries are overly vague, as addressed above.

**Eric Fruits.** Eric Fruits is the Secretary-Treasurer of the 501(c)(4) non-profit Citizens for Accountability Trust and Reform ("CATR"). Decl. of Eric Fruits, ECF [36], at ¶¶ 2, 4. DWT characterizes CATR as "Counsel's co-client" and "partial funder." Pls.' Reply 9; DiLorenzo Decl. ¶ 18. However, CATR is not a named plaintiff in this case. The parties have not supplied any case law to support billing for time engaged with a third-party payor. *See* Def.'s Resp. 7; Pls.' Reply 9. Therefore, time spent in contact with Eric Fruits is deducted. *See* DiLorenzo Decl., Ex. C. This results in a deduction of $13,336.00 for 11.8 hours billed by Mr. DiLorenzo in 2022 and 3.4 hours billed by Mr. DiLorenzo in 2023.

**TriMet.** The City's concern with contact with TriMet and the other organizations mentioned below is that the entries are so vague that this Court cannot "discern how these communications altered or positively impacted the Plaintiffs' outcome." Def.'s Resp. 7–8. DWT argues that these communications are properly shiftable because the organizations could "enact policy changes accretive of Plaintiffs' goals, pressure the City, or impact the settlement." Pls.' Reply 9. TriMet, for instance, employs

bus drivers who can report tent encampments. *Id.* Mr. DiLorenzo alleges that TriMet was closely following this case and reached out to learn "how they could help." 2d DiLorenzo Decl. ¶ 20. As a result, Mr. DiLorenzo incorporated language into the settlement agreement that included access to mass transit stops. *Id.* The Court finds that communications with TriMet could have advanced DWT's litigation goals. The Court declines to deduct this time except to the extent any entries are overly vague, as discussed above.

**U.S. Attorney's Office.** DWT explains that the U.S. Attorney's Office ("USAO") was considering filing a statement of interest of the United States in plaintiffs' claims. Pls.' Reply 9. Indeed, several time entries clearly indicate that USAO's potential statement of interest was the subject matter of correspondence with USAO representatives. *See* Sheffield Decl., Ex. 13, at 2. The remaining time entries occur close enough to entries mentioning this subject matter that it is reasonable to assume that they also concern USAO's potential support for this litigation. The Court finds that this is a reasonable use of Counsel's time and declines to deduct these entries.

**Multnomah County District Attorney's Office.** DWT does not explain the role that contact with the Multnomah County District Attorney's Office played in its litigation strategy. *See* Pls.' Reply 9. DWT issued a subpoena to Multnomah County with consent from the City, but the City does not flag time entries related to the subpoena. 2d DiLorenzo Decl. ¶ 9; Sheffield Decl., Ex. 13. The City does flag several time entries indicating contact with "J. Strauhall," who is a Multnomah County assistant attorney. *See* Sheffield Decl., Ex. 13, at 3. Most of these entries are vague, and such vague entries have already been deducted. Therefore, no additional action is needed to address time billed for contact with the Multnomah County District Attorney's Office.

**Business Interest Groups.** DWT does not explain the role that contact with business interest groups played in its litigation strategy. *See* Pls.' Reply 9. , The Court acknowledges that plaintiffs likely had the support of business interest groups who could have contributed to plaintiffs case by bringing case law to the DWT team's attention or by lobbying the City. Given DWT's success attaining significant injunctive relief, it is not unreasonable to award its time spent in contact with these allies. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully

compensatory fee."). However, many of these time entries are vague and describe contact with names that were not defined for the Court. Because such vague entries have already been deducted, no additional action regarding time entries for contact with business interest groups is warranted.

**Former Portland Fire Bureau Official.** DWT states that its team consulted with a former Fire Bureau employee and safety consultant, Don Porth, "as part of an effort to persuade the City off of its initial reluctance to provide more than 36-inches of access to persons using the sidewalks." Pls.' Reply 5; 2d DiLorenzo Decl. ¶ 16. This effort was successful, because the final settlement agreement required the City to prioritize keeping the entirety of pedestrian rights of way clear. Pls.' Reply 1. DWT's explanation for this time is satisfactory, and the Court will not deduct this time.

In summary, the Court REDUCES vague time entries by 50%, REDUCES media time entries by 50%, DEDUCTS some duplicative time entries, and DEDUCTS time entries regarding contact with Mr. Fruits. This results in a deduction of $530,827.65. After adjusting for inflation, the Court AWARDS a total of $575,339.24 in merit fees.

**C.    Fees in Support of the Motion**

1.    *Fees-for-Fees*

The City asks this Court to reduce the amount of fees-for-fees requested by 50% because DWT failed to provide adequate descriptions for 53% of its time entries, failed to provide support for time billed communicating with non-plaintiffs, and used a minimum 0.2 billing. Def.''s Resp. 9. DWT requests that this Court either award its full request or reduce its fees-for-fees award in accordance with the "same percentage of merit fees ultimately recovered." Pls.' Reply 10 (citing *Davis v. Wal-Mart Stores, Inc.*, No. 3:09-cv-01488-MO, 2012 WL 1424105, at *4 (D. Or. Apr. 23, 2012)).

In *Davis v. Wal-Mart Stores*, the court applied the Ninth Circuit case *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895 (9th Cir. 1995). In *Schwarz*, the Ninth Circuit upheld a district court's decision to award 50% of the fees-for-fees requested "because this ratio actually exceeded the percentage by which [the plaintiff] prevailed on her request for merits fees." *Id.* at 909. Here, the Court agrees that reducing DWT's fees-for-fees award proportionate to its award of merit fees is the most

reasonable approach.

Plaintiffs originally requested a total of $676,556.50 in merit fees, not including an adjustment for inflation. Pls.' Mot. 3. After applying the deductions, both regarding the attorneys' billing rates and reductions for vague and other time entries, DWT was awarded $530,827.65 in merit fees, which is 78.46% of its full request. Therefore, the fees-for-fees award is reduced to 78.46% of the total request. DWT requests a total of $26,525.50 for work performed in relation to this fee petition. Pls.' Mot. 1 n.3, 4. 78.46% of $26,525.50 is $20,811.91. Therefore, DWT is AWARDED $20,811.91 in fees-for-fees.

      2.    *Expert Fees*

The City argues that DWT's request for $13,000 in Mr. McDermott's expert fees should be denied because Mr. McDermott could not have adequately evaluated DWT's vague billing entries and because he failed to address how the results of this case warranted a greater fees award than other ADA cases. Def.'s Resp. 9; *see* Sheffield Decl. ¶ 20 (reviewing other fee awards from the Oregon District Court involving the ADA). DWT replies that "Mr. McDermott opines the bills are 'more than sufficient to evaluate the reasonableness of the work performed.'" Pls.' Reply 8. DWT also distinguishes this case from other ADA cases, arguing that this case "leveraged creative statutory claims and maneuvered political obstacles," whereas most ADA cases involve a single plaintiff with a discrete and easily remediable violation. *Id.* at 2, 7.

The Court agrees that this case is more complex than most ADA cases. *See, e.g., Trimble v. Kroger Co.*, No. 3:17-CV-00230, 2017 WL 6419115 (D. Or. Dec. 15, 2017) (employment discrimination/accommodation); *Quesnoy v. Oregon*, No. 3:10-CV-01538-ST, 2012 WL 1155832 (D. Or. Apr. 6, 2012) (failure to provide plaintiff with a walker). *But see Lane v. Brown*, No. 3:12-CV-00138-ST, 2016 WL 589684 (D. Or. Feb. 11, 2016) (class action). Further, the Court finds that Mr. McDermott provided a sufficiently thorough and helpful expert opinion, which opined on multiple questions, including the reasonableness of counsel's rates, the reasonableness of DWT's billing practices, and the reasonableness of DWT's strategic approach to achieving concessions from the City. *See* McDermott Decl. Therefore, DWT is AWARDED the full amount requested for Mr. McDermott's expert fees.

## CONCLUSION

Accordingly, plaintiffs' Motion for Award of Attorney Fees and Costs, ECF [30], is GRANTED in part.  Plaintiffs are AWARDED $609,151.15 in fees and costs.

IT IS SO ORDERED.

DATED this 30 day of November, 2023.

Adrienne Nelson
United States District Judge